141097, Wayne Spencer and Mach 5 Leasing Incorporated against Taco Bell Corporation and Foundation. Mr. Dethkois. Good morning, Your Honors. May it please the Court. The issue presented, or one of the three issues presented, is whether the lower court applied the proper standard for determining whether Section 120 of the Patent Law controls or was properly applied. In this case, the lower court, this is a case of a parent utility application followed by a design patent application. The design application claimed the priority of the utility patent and needs the priority of the utility patent in order to be not barred by the sales, the yearly sales or one-year sales. The lower court applied the rationale that Daniels, which was a design-on-design case, said that if you're looking to look for 120 requirement fulfillment, you look to the drawings of the parent application. Well, that was a misapplication because they've been aligned. Is your argument that when the court reviews the prior application that it's limited only to the drawings and the figures in the application? Correct. The court just looked to the drawings. My argument was that in cases such as VASCAT, where there was a design application, they looked to not only the drawings and for subtle, reasonable modifications of the drawings, or in other cases, cited where there was a utility patent and the court looked to the specification, the drawings, including the abstract and the claims, to fulfill 120 requirements. Isn't it fair to say that what the district court judge did here was first look at the drawings of the 414 application and compare those drawings to the patent drawings, but then in the alternative, also looked at the actual text of the 414 utility patent application and searched through the text and ultimately found that the text also didn't provide written description support for certain features of the patented design. Isn't that a fair way to understand the opinion? A fair way to understand it would be that the judge did... Like, for example, at page 16 of the opinion, this is with regard to the six raised triangles on the top of the lid. Even accepting the plaintiff's approach, the text of the application cannot save the drawings. After searching through the specification and claims, the plaintiffs find no text discussing six raised triangles. That's just one example. And then it does a lot of the same things for the other missing features and then ultimately says, even accepting the plaintiff's approach on page 19 of the district court opinion, the written description remains insufficient. For each difference, the text of the 414 application either adds nothing to the drawings or further clarifies that the 414 application drawings are incompatible with the 474 patent drawings. Well, the judge applied the standard or what he thought was the standard where it has to be a copy of it, a duplicate of it. Whereas this court has said that the priority application or the application that priorities claimed of must enable a person skilled in the art to reasonably determine that the invention was in the possession of the inventor at the time of the invention. If you look at the drawings of the 414, which was the parent application, there is a raised area in the center of the lid. Now, it's not claimed, but it does show up in the 414 drawings. This is a reinforcement area. The triangles are reinforcement triangles. The question is, and it's a question that the court didn't ask or answer, was if one skilled in the art, if they saw the reinforced area in the center of the lid and then viewed the other areas, would understand that the inventor really did invent that invention. What reinforced area are you talking about on the lid of the 414 application? If you argued this point to the district court, I'd be interested in seeing that in the brief. I believe it was in the reply brief. You filed an opposition to a summary judgment, right? Correct. So... Well, the summary judgment order came out after all that was filed, but in the reply brief to this court... No, I'm sorry. I'm saying, did you argue this point to the district court judge below in opposition to your opponents? That the lid has some kind of reinforced area, and when you look at the illustration of the lid on the 414, it would make clear that you would have some appreciation that you need any kind of different shaped reinforcements. For example, six raised triangles. I do not believe that I did. Okay. But I raised that after the court's decision when it came down that he just looked at the drawings. My point was, it's there in the drawings as well. Now, the question is, did the court err in not seeing it? The court will see what it sees. Is your argument that the court erred in limiting its review for written description support only in relation to the drawings? Well, not only that, but they also applied the standard, if you will, that there had to be an exactness between the drawings of one and the drawings of the other. One of the points is the court said, well, the drawings of the earlier application shows an angle, and the drawings in the later application show that it's rounded. The standard would be that a reasonable person skilled in the art would look at one and understand that you invented the other. And our position was that the court erred in doing this. In all the analysis, the court also looked at the rubber vibrational pads at the bottom and said, well, you didn't show that they're exactly round or you didn't describe that they're round. There were some issues with the description, but I think one skilled in the art would look at a vibrational pad, realize what it was for, and look at the pad in the later on design application and say, well, yeah, I understand that you invented this aspect of it. And so that's really what it comes down to. Then there are other issues as far as did they apply the proper infringement standard, which was that the court didn't do a claims construction. I realize that claims construction and design patents is very limited, and usually you can't reduce a picture to words. However, this court has said that when you have something that's functional and ornamental mixed, you must, in order to find infringement, separate out all those items that are considered functional. That is, their configuration is determined by either price or cost or actually utility which they carry out. In this case, the court didn't look at any of the functionality or the things that were functionality and said, and by the way, it would have infringed anyway because it considered several things that were considered functional and not to be considered part of the claim. We're talking about infringement now, not infringement. Yeah, when the court went on to say, well, I'm going to say 120 is not applicable here, and also it doesn't infringe anyway. But I think it also erred in that side. Right, but again, going to your infringement question, I didn't see you argue in opposition below that the court needed to differentiate the functional features from the overall design features. And as you, as the patent owner, were in the best position to identify which were the features that were functional and therefore shouldn't be considered in the infringement or non-infringement analysis. I mean, it's an interesting argument that you raised to us, but I don't know if it's a basis that we can use to overturn a decision by a district court if the district court never had the argument in front of them in the first place. I have not... You might answer that question during rebuttal time. Yes, yes. Tell us what else you need to tell us. Those are really the two. The third issue was... The issues are intermingled. Oh, and the other issue raised was whether the court erred in its analysis of the design by looking at an element-by-element basis rather than looking at substantially the entire device. That's what it is. They looked at the corners and said, well, the corners are sharp or rounded, the pads are not in the proper place where we can't tell. It didn't look at the whole device and the whole picture that it gave in determining whether there was infringement or not. But, I mean, also separating out the functional aspect was also a major part of it. Okay. Any more questions at the moment? All right. We'll save your rebuttal time, Mr. Desmond. Let's hear from Mr. Joyner. Yes, Your Honor. Good morning, Your Honor. If you'll please report the case in great detail. The judge's order was in great detail. I'll focus on what the public brought up in answering the court's questions. It will help a greater understanding of the issues here. Going to the first issue of invalidity, the court made very detailed arguments, as Your Honor pointed out, on page 16 of the court's order. The court did say that if you look through the illustration, he also said he went to the text, but there was nothing there. To quote some further findings from the court, in addition to the ones that Your Honor quoted, the court found, quote, on page 16 of his order, which is at appendix 16, even accepting Spencer's approach, the text of the 414 application cannot save the drawings. The bottom line is the court did take a look at the text, and it did. Didn't the court limit its review of the text only with respect to the drawings? Well, Your Honor, with respect to a design patent case, the court does look to the specification for any explanation of the illustrations. Did it consider the entire specification and look for written support in the entire specification, or did it only look for written support with respect to drawings, whether there's sufficient description that meets or addresses the drawings? Your Honor, I think the district court did look at the entire specification, but all they found were description of features that have functions, not ornamental design. And that's why the court could not find anything in the specification that would help it in determining whether or not the later file design application could claim priorities in the utility application. The court's opinion in Raising Strollers, I always want to say Rolling Strollers, Raising Strollers is instructive. The court there said you do look at the illustrations, but the specification may have some description that might be helpful in explaining the illustrations. So the court did follow this course, holding in Raising Strollers, but there just wasn't anything there. So is it your understanding of the law it's not just drawings to drawings? If the parent or the purported parent, if the utility patent, that you look at both the drawings and the text of the utility parent patent? Yes, Your Honor, that is my reading of the case authority. Cases do say you focus on the illustration, but if there's something in the specification that could assist... But isn't the case authority is whether the ordinary observer looking at one is likely to think that it's the other. So if there is description in the text that would be relevant to that, isn't that something that might cause an observer to think one is the other because these extra embellishments are trivial or not conspicuous? Yes, Your Honor, as long as it doesn't involve a teaching or it's not something that would be claimed to be an obviousness issue. There are some arguments both in the lower court and the trial court that censored the appellate mate with respect to the specification teaching. And that it would have been obvious to an ordinary 2A student that one of these ornamental designs would have been in the convention at the time. It would have been in the concession list at the time. However, that's not the law. In Tom's own, the court's opinion, the court did find that obviousness is not sufficient. Also in the court's opinion in Pilar de Aces, Tim Holden, that obviousness is not the test. And in Daniels, which Spencer's counsel mentioned earlier, the court found that it must necessarily describe the illustration. So there's plenty of authority out there that gave the court enough to rely upon and apply the standards and apply the test. The court did that in a very detailed opinion. We believe that also the Spencer's argument with respect to the genus species analysis does not help in this situation. The cases that they cite are utility-packed cases. There are some cases also that they cite with respect to measurements and ranges of measurements which don't apply to this case. In the genus species analysis, even if it were to apply, the court has made it clear that the specification, you can't just draw a box around the genus. And there are cases where perhaps the genus species analysis would apply, but in this design patent case, that also doesn't apply. Do you think that's true for design patents in general? You said in this particular design case it doesn't work, but do you think it's true for design patents in general? I would really have to think through all the different possibilities for design to understand whether or not that's true or not. I don't think the court has to reach that issue here. But with respect to this game canister, there is not a genus species issue, and the palate of Spencer has not been able to describe in any manner how that would apply here. The court has found that the different factual scenarios with respect to the claimed invention may dictate how the district court conducts its analysis. Just one last thing on invalidity. Earlier, Spencer's counsel was arguing about whether or not... Before we move on, I'm concerned that the district court may have erred in its application of the law. And looking at J15 in the second complete paragraph about the third line, it says... It's referring to the plaintiff's argument. It's arguing to the court that you have to look for description of the features also in the text in addition to the drawings. It says the plaintiff's argument is prescribed. The written description requirement looks to the drawings and consults the specification only to describe the drawings. And do you think that's a correct articulation of our precedent? Your Honor, I believe that Spencer takes this part of the court's argument out of context. And also, this is where Spencer the appellate is arguing about the specification teaching. And that if something is obvious to one skilled in the art, that that would be acceptable. I think what the court is saying here is that you don't look to the specification as to whether it teaches the one skilled in the art. If the drawing has six pads, but the description says that the item may have pads. It doesn't say six pads. Shouldn't that be considered as well? Because I think the district court here was making a reference. You've got six pads in the accused device, and the invention's only got four. Or the design's only got four pads. Only by looking at the drawings. Your Honor, with respect to the pads, that's one of the, I think it's six features that the court looked at. I don't think that the specification saves the issue there, but I do understand. No, that's a hypothetical I was giving you, assuming it did. Yes. If I can understand Your Honor's question, if the specification mentioned that it could have any number of pads, would that assist the district court in determining that it would be okay if the later claim to invention had more than two pads? That's Your Honor's question? Yes, something along those lines. Your Honor, I did think through that, and whether or not that type of explanation might be helpful. And I'm not so sure that that explanation is detailed enough, but I think there are explanations that could have been in the specification that could have been helpful to the district court. I agree with Your Honor. But here we didn't have those explanations, which is actually the point I was getting ready to move to. You hit right on where I was going, which is if the court was to apply the logic that the appellant tries to apply here, the court would be rewarding vagueness in applications. That was one of the district court's holdings. So what the district court is saying here, if you agree with Spencer's argument that the description can teach one's guilt in the art, and that one's guilt in the art could find that these ornamental features were obvious, then you're rewarding vagueness in the patent applications. And that's not what the case law says. As I mentioned, in Tronzo and Paroasis, this court has found that obviousness is not the test. So I think that's where the court was going when it said that the specification fails. You look to the specification for explanation of the illustrations, because Spencer the appellant was going far afield to a totally new standard. What if all the illustrations, the cylinder is oval, and it says in the specification that the cylinder can also have a hexagonal shape to it? Be it every illustration, you have an oval shape. Well, again, I did think through this, because I was trying to think intellectually as to what might have been if things had been different. And I'm still not certain that one comment that it could be hexagonal, it depends on the detail, would save the illustrations, and you would have to also look at the later claimed invention and determine whether or not, well, is it hexagonal? Is there an example of a description through text that would make you comfortable that the text sufficiently described an ornamental feature? Well, I think we'd have to go through the ornamental features that the court pointed out. I mean, there are cases out there where, and this is where we get into the dimension cases, where you have dimensions, where the court has found that the dimension of the, and there were no dimensions in the 414, but in the illustrations. But if this were a case that involved ranges or dimensions, if the earlier specification gave some indication as to dimensions, but maybe didn't give the exact dimension, and then the later claimed invention gives a detailed description of the measurement, then that is something that might help the court in determining that the later claimed invention could claim priority. But this is not that type of a case. So that's part of the problem here, I think, is that Spencer's brief below, and the brief before this court, are mixing cases about utility patents, measurements, ranges, pharmaceutical cases, all sorts of different cases that just don't apply to a game canister. And the earlier application was vague as to the ornamental designs of the illustration. So I would close with respect to the invalidity issue that if the court were to adopt this new standard, which a three-panel court cannot adopt a new standard that would go against Tromso and PowerOasis, it would reward vagueness in the applications. And then I'd just like to spend a couple of minutes on infringement. With respect to infringement, the Egyptian goddess case from this court mentioned that there's no need for the district court to provide a detailed verbal description of the claim design. As Your Honor pointed out, Spencer was in the best position to present to the court that that needed to happen. But I would also present to the court that there's no argument that it needed to happen here. When it comes to validity of a design patent, the district court does have to provide some kind of detailed verbal description of the claimed design, right? Yes, Your Honor. So why is the law the way that it is when it comes to a design patent infringement? There is no need to provide some kind of articulation of the claim design for purposes of infringement, but it is required for purposes of validity. Well, Your Honor, I think there are certain instances, and that's where the Richardson case comes in, where the court might find it useful to construe the patent design. Here, that wasn't the case. And in fact, Spencer had argued below that none of the features were functional. So the court, you assume that it's valid for purposes of infringement. So the district court does. So you don't have to construe the patent for purposes of validity when you're doing an infringement analysis. And here, Spencer said that all of the elements were not functional. So there was no reason here for the court to construe the patent. Isn't it just simply the ordinary observer test? Absolutely, Your Honor. It's that simple. It's the ordinary observer test. And here, there were so many similarities between the 474 patent, the asserted patent, and the prior ARC 801 patent, that the ordinary observer would have paid much more attention to even the smallest differences. And even if the court would have stripped out the functional features that now, for the first time, Spencer is claiming are functional, three of those four, what he claims, are the non-functional features. The handle, the rod in the middle, and the paddles. Those actually, the court found that those were very similar between the 474 and the 801. So the ordinary observer would not have even paid attention. The design patent is for a utilitarian object. So all sorts of features have a function. Yes, Your Honor, they can. The appellant, Spencer, claimed that none of those ornamental features were dictated by any of the function below. Well, that helps him, doesn't it? Well, he claimed that they were, for infringement, he claimed that they were not functional. That those ornamental designs were not dictated by the function. And so the court compared and found as a whole, despite Spencer's argument, found as a whole that there was no infringement. The example that's always used is a toaster shaped like a locomotive. Is that functional? Well, there are functional elements to the toaster, Your Honor. The locomotive design is an ornamental element. Okay. Any more questions? Thank you. Thank you, Mr. Joyner. Your Honor, Judge Chen, I would like to respond to your question as to whether the issue of functionality and ornamentality was brought up at the lower court. And I would refer you to page 466 of the appendix, wherein the argument to the court was, while there, quote, while there has not been any determination by the court as to what is considered functional or what is to be considered ornamental, one is left without an understanding of what is to be considered in the infringement analysis in this instance. And then I went on to cite the Egyptian goddess case. So the point was that the court was urged to do some type of analysis of what's functional, what's not functional. Now, as far as Spencer claiming that all things were functional, I don't believe that's the case. I believe the first issue of functionality was brought up by opposing counsel in his brief to the court in his motion for summary judgment. And what this counsel did was to agree with him on some of the issues. He said everything was functional. And I said, and in my brief I said that, well, yeah, we consider the lid to be functional and the base to be functional, and the things that are ornamental are the rounded turn handle, the shaft, and the pedals. And so we thought that that should be where the infringement analysis would really go, because we were both in agreement as to things that were functional. He said all were, and we said, well, some of them are. So we were in agreement with opposing counsel on some of the issues. The clear six-sided glass or plastic is functional. I mean, it had to be. Spencer said that in his deposition. So we argued that the court should make some type of determination, and it did not. And those were really the last issue is that I would say in listening to this hearing procedure, what was plain to me is that the Federal Circuit has given forth opinions, and those opinions say that there has to be, in order to do an analysis of 120, that one skilled in the art, reasonably skilled in the art, would reasonably understand that what was invented was there. Then there is, as far as infringement, you have to look at the item and the accused device and their patent, and you have to see if there's a substantial similarity. These are words that have huge amounts of what's referred to in the vernacular as wiggle room. I don't think that the specificity and exactness is required as opposing counsel suggests. As this court had said in the case, and I can't remember the citation, was that if you required such exactness, there would be no such thing as the design patent, because it would be very easy to overcome just by changing a line. But when it comes to written description, doesn't the court's case law talk about how obvious variations don't satisfy the written description requirement? Well, I'm not sure the issue of obviousness was ever raised in the lower court. In fact, I guess the idea is maybe there's a difference between the features that correspond between the parent application and the patented drawings, and maybe one could say, Well, they're different, but it'd be obvious to do the tweak to meet the change. But nevertheless, under written description law, the parent application necessarily has to have the disclosure for all the features of the later claimed patent, and it can't just be an obvious variation. Well, you're getting to obviousness. Yeah, I am, but it's a notion that's in the written description. No, I understand your point, but the point I was going to make is that when you're dealing with obviousness, you have to look at underpinnings as to why it would be obvious to someone. In other words, if you have in the old prior art, there was a hexagonal shaped handle, a turning handle, and now in the newer piece of the drawings, the handle's round. Yeah, it might be considered obviousness to change it, but the court has long recognized that just about everything is based on something else, or the person rendering the opinion has to say, Well, it's obvious because it solves this problem, or this is one of the issues raised with it. Just changing it, especially in the context of a design patent, I mean, how obvious is it to put your name on a football, and yet there's design patents with a name on a football with fins on it? Well, your example about the handle being hexagonal or circular, doesn't that go right into the teeth of In Ray Salmon, which was the design patent case about a stool, which kind of had these funny legs that were shaped in an odd configuration, but the seat had changed from the parent application to the later filed application, from a square seat to a round seat, and then the CCPA said, No, sorry, you can't go back to the earlier filed application and get that earlier priority date, because you didn't have a written description for the now claimed circular seat. I understand that. That's an accurate description of that case. What I was referring to was in the parent application, it was round. In the issued application, or the application at issue, it's round. In the prior art, it was hexagonal. So, the roundness was a new development or a new issue or a new aspect, if you will, limitation of the parent and a new limitation of the design. In your case, they had a round stool or square, and then they filed another application, and they said, Well, this was taught in the other, and round square doesn't matter. That's where there's a direct relationship. What I'm saying is the prior art, and when you're talking obviousness, because the parent application, as far as obviousness, doesn't count. You have to go back to the prior art, and the prior art had a hexagonal shaped handle, whereas in the parent and the subsequent design application, it was round. Now, the issue is, does obviousness come in? And my argument would be that it wouldn't, because there's no underpinnings. There's no rationale for making the change from a hexagonal shaped handle to a round one that would be obvious to one of the engineers to solve a problem. And I think that's part of the underpinnings is you have to address why one would do that. Although the TSR test analysis went out with, I can't think of the name. KSR?  KSR, maybe? Right, KSR, right. But in KSR, they said, You just can't say it exists somewhere else. You have to say that there is the rationale, and that was, I believe, the word they used, which goes back to the TSR test, but in a little different form. But anyway, the point I wanted to make was that there was a lot of ambiguity built into the system, and I think saying that we're trying to build ambiguity into it is not the case. Ambiguity is already there, and that's why design patents are so factually driven, and why it's hard to make case law about design patents in general, other than how they are to be analyzed, because the facts are so different for just about everyone. And I think this court has recognized this for quite a while, and that's why it's always continued the same reasonable, one scovenier could reasonably determine, or there's a substantial similarity. Those types of very, very, I hate to use the word, but vague standards. But that's what it comes down to, and that's why we're here. Okay. Any more questions? No. Okay, thank you. Thank you both. The case is taken into submission.